## CITY OF COLUMBIA v. TINDAL.

1. INJUNCTION—OPENING AND REPLY.—On the hearing of a petition to this court for an injunction, and a return to the rule to show cause why the injunction should not be granted, the plaintiff is entitled to open and reply.

2. IBID—TAXATION OF MUNICIPAL PROPERTY—SALE.—The State may tax the property of municipal corporations, and may tax a part and exempt other parts, but an injunction will be granted to restrain an officer of the State from proceeding under the general law to enforce the collection of taxes against a city hall by sale of the property in fee, where several rooms in the building are not subject to taxation, but exempt by law because used exclusively for public purposes.

This was an application to this court in its original jurisdiction, for an injunction. On the call of the cause for a hearing, both sides claimed the right to open and reply, and the court ruled that the petitioner was so entitled. The petition was as follows:

*To the Honorable the Chief Justice and Associate Justices of the Supreme Court of the State of South Carolina:*

The petition of the city of Columbia respectfully showeth to your honors:

1. That your petitioner is a municipal corporation of the State of South Carolina, having been originally chartered by the legislature of said State as the town of Columbia, in the year 1824 (6 Stat., 240), and said charter having been from time to time renewed and amended, and its present charter, under the name of the city of Columbia, having been granted by said legislature on the 21st day of December, A. D. 1854 (12 Stat., 333).

2. That a lot of land within the limits of said city, on the north-west corner of Main and Washington streets, was vested in said municipality by authority of an act of the legislature in 1818 (6 Stat., 102), and by other acts of assembly, and has since been a part of its property. The said town of Columbia caused to be erected on said lot of land many years ago, its guard house and fire engine house, and also another building known as the town hall, but which was used also on its ground floor as the public market of the town. The large hall on the second floor was used for public town meetings, and was also rented out from time to time for exhibitions and entertainments. In this building were also the council chamber and clerk's office, and in its tower was the town clock and lookout for the watchmen of the town. All of these buildings on said lot of land were totally destroyed by fire on the night of February 17–18, 1865.

3. In the year 1866, the legislature confirmed to the city of Columbia its title to the lot of land aforesaid, and also vested in said city another lot of land adjoining on the west, known as the "jail lot;" upon a condition which was fully complied with by said city; but from the year 1865 to the year 1871, the said city council was without any public buildings of its own, to its very great inconvenience and expense. In the year last named a resolution was adopted by the city council of Columbia, looking to the erection of a city hall, and a committee was appointed, with instructions to call for plans for such a building. Plans were accordingly furnished by an architect, and under

said plans the building hereinafter described as the "city hall" was erected, and now stands upon said lot of land, and is the property of the said municipality, the city of Columbia. At or about the same time a public market house for said city was erected at another spot, to wit: in one of the public streets of said city.

4. The said city council not having in hand the funds necessary for the erection of the desired buildings, and the cost thereof being in excess of any proper tax levy, in addition to what was required for the ordinary expenses of government, the said city council passed its resolution providing for a loan of $75,000, to be used in the erection of said city hall, and directed the issue of $250,000 in bonds of said city, to be used as a collateral pledge for the repayment of said loan.

5. On March 13, 1872, the General Assembly of the State of South Carolina passed an act authorizing the issue of bonds which, with the bonds then outstanding, and including the said city hall bonds, should not exceed the sum of $600,000, for the purpose of constructing the city hall and new market (15 Stat., 220); and by the tenth section of said act it was provided and declared that the income derived by the city of Columbia from rentals of any portion of said city hall, should be appropriated as a sinking fund for the ultimate redemption of the bonds so issued under said act.

6. The bonds so directed and authorized by the act of assembly were accordingly issued, and the provisions of the said tenth section of the act of 1872, were printed on the back of each and every of said bonds. And the bonds provided for by the said resolution of city council were taken up and retired, and all the moneys received from the sale or hypothecation of said statutory bonds were used in the erection of said city hall, and all bonds hypothecated were sold by the pledgees for the payment of the loans, for which they were hypothecated.

7. The city hall so erected contains the following rooms and apartments, to wit: (1) The council chamber of the city council, and so used. (2) The office of the clerk of council, and so used. (3) The office of the chief of police, and so used. (4) The police court room, and so used. (5) The tower, constantly

used by the day and night watchmen of the city, and in which is hung a large bell used for striking the hours, and for a fire alarm. And from none of the rooms or apartments aforesaid has any rent ever been received. (6) A large room used for some time as the office of the city engineer, and of the board of trustees of the Columbia Canal, but now rented to a military company of this city as an armory. (7) Four stores on the ground floor, which are and have been rented out. (8) A small hall on the upper floor, occupied and rented by an association known as "The Knights of Pythias." (9) A large room on the upper floor, rented to a military company of this city as an armory. (10) A large room, known as the opera house, with rooms appurtenant for players, and for the lessee and his family. This last named hall is rented for a consideration, the city reserving the right of its use to its citizens when required by them for any public or charitable meetings or educational celebrations of the citizens, on paying for lights.

8. That the said building was erected by the city of Columbia of very lasting materials at great cost, and with the hope and belief that the future growth of the city would demand larger accommodations for the city government, and with an earnest conviction that the city hall of the capital city of the State should be an ornament to the State, as well as to the city; and the construction and addition of rooms and apartments beyond the present demands of the city for the proper accommodation of the city goverment, was only incidental to its declared purpose of erecting a city hall for the public uses of the city government.

9. That some of the rooms and apartments in said building have been completed by the lessees thereof as the consideration for their lease, and parts of the interior of said building are still unfinished. During the whole time that the city have been in receipt of rents therefrom, the aggregate sum received up to December 31, 1893, inclusive, amounted to $48,694.50, and the aggregate disbursements on account of repairs and improvements have amounted to $48,270.85, an excess of $423.65 of receipts over disbursements.

10. That your petitioner never paid any State or county

taxes on the buildings on said lot which were destroyed by fire in February, 1865, and no such payment was ever demanded, and has never paid any State or county taxes on said city hall building, conceiving that the said building was not specifically subject to taxation under any statute of this State, and not generally liable, as the said building was the property of one of the agencies of the State government. And your petitioners aver that it is not so subject to taxation.

11. But the honorable J. E. Tindal, who is secretary of the State of South Carolina, and agent of the commissioners of the sinking fund, being advised that the said city hall building is liable to the payment of State and county taxes during all the years that it has so failed to pay any taxes, has given notice to the said city of Columbia, that there is due to the State of South Carolina for State and county taxes, the tax levy of the year 1877, and every year thereafter, together with the legal penalty for non-payment, and threatens to collect the same by causing the said building to be seized and sold, under the terms of the act of 1892, entitled "An act to provide an additional remedy for the collection of taxes, costs, and penalties upon lands past due and unpaid for eight months." (21 Stat., 82.) Whereas, your petitioner avers that the said building is not subject to taxation, and that there is nothing in the said act of 1892, or any other statute, which authorizes the secretary of state, as agent of the commissioners of the sinking fund, or any other officer of the State government, to take any steps whatsoever looking to the assessment and collection of any tax whatsoever on the said city hall building or any portion thereof.

12. That any further proceedings under the act of 1892 against the said property will deprive petitioner of possession thereof, and will cause irreparable injury to your petitioner, and cast a cloud upon its title, and involve it in vexatious litigation, and your petitioner has no remedy in law in the premises, but only by writ of injunction in equity.

Wherefore, your petitioner, the said city of Columbia, prays that the said J. E. Tindal, as secretary of state of the State of South Carolina, and agent of the commissioners of the sinking fund, his successors in office, his and their agents and servants,

be perpetually enjoined from proceeding any further under the said act of 1892, or any other now existing statute, to assess or collect any taxes for State or county purposes on the said city hall building of the said city of Columbia, and that the said building be declared by this honorable court not subject to taxation under the laws of this State. And your petitioner, as in duty bound, will ever pray, and so forth.

[Verified.]

The return was as follows:

James E. Tindal, as secretary of state and *ex officio* agent of the commissioners of the sinking fund, upon whom has been served an order requiring him to show cause why the injunction prayed for by the petitioner herein should not be granted, respectfully makes return to said rule, and for cause shows:

1. That your respondent admits the truth of the statements of fact contained in paragraphs 1, 2, 3, and 7 of the petition herein.

2. That your respondent has no knowledge or information sufficient to form a belief as to the truth of the statements of fact contained in paragraphs 4, 6, 8, and 9 of said petition, and, therefore, denies the same.

3. That as to the statements contained in paragraph 5 of said petition, your respondent admits that by section 10 of the act of the General Assembly, approved March 13, 1872 (15 Stat., 220), it is provided: ''That upon the completion and occupation of the said city hall, the mayor and aldermen shall at once, by ordinance, make provision for a sinking fund, to be based upon the net annual income derived from such parts of the said city hall as may be leased from them, the proceeds of which sinking fund shall be solemnly set apart for the payment of the debt and the interest thereon, contracted in the erection of the said city hall;'' but your respondent has no knowledge of any such ordinance as that contemplated by said section having been passed, and, therefore, denies that the requirements of said section have been complied with.

4. That as to paragraphs 10 and 11 of said petition, your respondent denies so much of said paragraphs as alleges that said

city hall building is not subject to taxation, and that the secretary of state, as agent of the commissioners of the sinking fund, is not authorized to collect any tax on said building.

5. That, as your respondent is informed and verily believes, the city hall building of the city of Columbia, referred to in said petition, is liable to the payment of State and county taxes, and is not exempt from taxation by the Constitution or Statutes of this State, the said building not being "owned and used exclusively for public purposes."

6. That, as admitted in said petition, the city of Columbia has never paid any State or county taxes on said city hall building, and, as your respondent is informed and verily believes, there is now due to the State of South Carolina for State and county taxes on said city hall building the tax levy of the year 1877 and every year thereafter.

7. That the notice referred to in paragraph 11 of said petition was given under and pursuant to an act of the General Assembly of this State, entitled "An act to provide an additional remedy for the collection of taxes, costs, and penalties upon lands past due and unpaid for eight months," approved December 24th, 1892, a copy of which said act is attached to and made a part of this return; and your respondent prays reference thereto as often as may be necessary.

8. That at the time of the service of the notice above referred to, it was, and still is, the purpose of your respondent to conform strictly to the requirements and provisions of the said act of the General Assembly and other statutes of this State.

Wherefore, the respondent, having made full return to the rule herein, prays that the same may be discharged with costs.

[Verified.]

*Messrs. John P. Thomas, jr., Allen J. Green,* and *R. W. Shand,* for petitioner.

*Mr. Barber,* attorney general, contra.

April 15, 1895. The opinion of the court was delivered by

MR. JUSTICE POPE. The defendants, in pursuance of the provisions of an act of the General Assembly of this State, en-

titled "An act to provide an additional remedy for the collection of taxes, costs, and penalties upon lands past due and unpaid for eight months," approved 24th December, 1892 (21 Stat., 82), was proceeding to collect by levy and sale by the sheriff of Richland County what he claimed was taxes due by the plaintiff to the State and county of Richland since the year 1877. Whereupon the plaintiff started this action in the original jurisdiction of this court to secure a perpetual injunction against the defendant as secretary of state, &c., against any interference with the property known as plaintiff's city hall, alleging that no taxes had ever been assessed under the laws of this State against such property; and further, that the Constitution did not require such assessment for taxes to be made upon such city hall. The defendant admitted in his answer that he was proceeding to collect taxes for the State and county purposes on such city hall property of the plaintiff beginning with the year 1877, under and in pursuance of the provisions of the said act of 1892, and he alleged that such taxes were due, that their assessment was under the statute of this State; and further, that the Constitution of the State did authorize the levying and collection of taxes upon such property of the plaintiff. It is distinctly admitted that no question is intended to be raised as to what the amount of such taxes may be, nor is any issue made as to the power of this court to grant such an injunction as is here prayed for. The complaint and answer must appear in the report of this case. There being a necessity for some testimony, it was referred under an order from this court to John J. McMahan, Esq., as special referee, to take such testimony. So that the hearing before this court was upon the pleadings and the testimony taken before such special referee.

The fundamental facts of this controversy may be thus briefly stated: In the year 1818, the State vested a certain piece of land in the city of Columbia. Upon this piece of land the city of Columbia erected a brick building, the lower part of which was used as a public market, and the upper part was used as a town hall, wherein the city officers had their offices, and wherein the public assembled for public purposes, and wherein occasionally

opera and theatrical troupes performed, paying rent for such privilege. Also in this building was built the watch tower, wherein a large bell was used to sound the hours, day and night, and from which point the night watchman kept watch while the people slept. But on the 17–18th of February, 1865, this property was burned down by the United States soldiers; so that when the war ended, the city government was house-less, just as so many of its citizens were rendered homeless, by that exhibition of useless and pitiless spite against the whole people whose beautiful capital Columbia was. The citizens of Columbia in 1872 determined to rebuild their city hall, and with their characteristic faith in the future growth and development of their city, they began to erect a city hall on the old site heretofore referred to, and needing more money than a prudent levy of taxes for that purpose would yield, they procured legislative authority to create a public debt for this purpose by issuing bonds, whose proceeds should be applied to this purpose. On account of supposed defects and alleged irregularities in this issue of bonds for this purpose, an action was commenced to test these matters (*The State ex relatione Cathcart v. City Council*, 12 S. C., 370), and the result of that litigation was that such bonds were declared valid. In 1877, the city government of the city of Columbia occupied such city hall, but inasmuch as some of the building was not needed for public purposes, the city council rented out for profit such parts of the building as was not used.

To be accurate at this point, the following is the agreed statement as to how this building is used: 1. The council chamber of the city council, and so used. 2. The office of the clerk of council, and so used. 3. The office of the chief of police, and so used. 4. The police court room, and so used. 5. The tower constantly used by the day and night watchman of the city, and in which is hung a large bell used for striking the hours, and for a fire alarm. And from none of the rooms or apartments aforesaid has any rent ever been received. 6. A large room used for some time as the office of the city engineer and the trustees of the Columbia Canal, but now rented to a military company of this city as an armory. 7. Four

stores on the ground floor, which are and have been rented out. 8. A small hall on the upper floor, occupied and rented by an association known as "The Knights of Pythias." 9. A large room on the upper floor, rented to a military company of this city as an armory. 10. A large room known as the opera house, with rooms appurtenant for players, and for the lessee and his family. This last named hall is rented for a consideration, the city reserving the right of its use to its citizens when required by them for any public or charitable meetings or educational celebrations of the citizens on paying for the lights.

In view of this partial use of the city hall for private purposes, the secretary of state and *ex officio* agent of the commissioners of the sinking fund has sought to set in motion the machinery provided under the act of 1892, previously noticed by its title, to collect State and county taxes on this city hall property for every year since 1877 up to the present time. It is alleged by the attorney general in his able argument that "The Constitution of South Carolina, art. I., sec. 36, provides that 'All property subject to taxation shall be taxed in proportion to its value.' Following this is the statute (1 Rev. Stat., sec. 217), providing that 'Every person shall be liable to pay taxes and assessments on the real estate of which he or she may stand seized in fee.' Section 218 construes the word 'person' to include firms, companies, associations, and corporations. Now as to the exemptions, so far as applicable to this case. Constitution, art. IX., sec. 1, provides: 'The General Assembly shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, real, personal, and possessory, except mining claims, the proceeds of which alone shall be taxed; and also excepting such property as may be exempted by law for municipal, educational, literary, scientific, religious or charitable purposes.' Pursuant to this constitutional provision is sec. 222, Rev. Stat., which reads as follows: 'The following property shall be exempt from taxation, to wit: * * * 12th. All city, town, and village halls owned and used exclusively for public purposes by any city, town or village.'"

We propose to go directly to the point at issue in this case. All parties concede that this city hall property of the city of Columbia, the plaintiff, is partly, at least, exclusively used by the city of Columbia for public purposes. The attorney general in his argument has conceded that, as to property held by a municipal corporation strictly as a governmental agency for public purposes and used exclusively as such, such property is not taxable. The act of 1892, under which the defendant is proposing to act, requires the sheriff to sell the piece of property upon which taxes have not been paid, and convey a fee simple title therefor to the purchaser. Then, if this act allows the sheriff to sell plaintiff's property, part of which is confessedly not liable to pay taxes, have we not a case demanding a remedy in equity? It seems so to us. We do not deny that the General Assembly has the right to tax the property of municipal corporations, nor, on the other hand, that it can provide a tax on part of such property, exempting another part. But we do mean to say, that the provisions of the act of 1892, under which the defendant now proposes to act, cannot be enforced under the circumstances developed in this case. We prefer to go no further in this discussion. It follows, therefore, that the remedy as prayed for by the plaintiff should be applied by this court. Therefore,

It is the judgment of this court, that the defendant, his successors in office, his agents and servants, be, and they are hereby, perpetually enjoined from proceeding under the act of the General Assembly passed on the 24th December, 1892, to collect any taxes from the plaintiff on its property known as the city hall.